## In the United States District Court
## for the District of Kansas

---

**United States of America**,
          Plaintiff,

v.                                        Case No. 21-10016-01 EFM

**Randy Sporn**,
          Defendant.

---

## Motion to Suppress

---

Randy Sporn, through undersigned counsel, moves to suppress evidence unconstitutionally obtained by the government in violation of the Fourth Amendment. The government conducted an unconstitutional warrantless search of Mr. Sporn's Twitter accounts. It then used the unconstitutionally obtained information to bootstrap a series of search warrants. The evidence derived from the government's unconstitutional warrantless search should be suppressed. Independently, the Court should suppress any evidence derived from the search warrants issued by Sedgwick County District Court because they did not authorized the search conducted by law enforcement.

### 1. Procedural background

On March 12, 2021, the government filed a three-count complaint against Mr. Sporn, charging him with production of child pornography on January 23, 2020, in violation of 18 USC § 2251(a) (Count 1), committing that offense while required to

register as a sex offender in violation of 18 USC § 2260A (Count 2), and possession of child pornography on March 11, 2021, in violation of 18 USC § 2252A(a)(5)(B). D.E. 1.

Mr. Sporn was arrested on March 17, 2021. D.E. 2. He has been in pre-trial detention since that time. D.E. 9. Later in March 2021, a federal grand jury returned a three-count indictment against Mr. Sporn, charging the offenses described by the complaint. D.E. 10. After four ends-of-justice continuances, D.E. 16, 18, 20, 22, the Court set a motions deadline for October 27, 2021. D.E. 22. This timely motion to suppress follows.

## 2. Fact and analysis summary

This investigation began when Twitter provided NCMEC with three tips (two of which were duplicates) about the presence of suspected child pornography uploaded to their service. The tips included: five attached particularly identified media files by Twitter – images, videos, and text captions that had been publicly "tweeted;" and two .zip folders that contained what appears to be the entirety of two private Twitter accounts owned by Mr. Sporn, including private messages exchanged stored on Mr. Sporn's Twitter accounts.

Twitter viewed the publicly available images, videos, and tweeted captions. But that's all Twitter did. Twitter did not search the private messages or their attachments or anything else on the .zip folders. Instead, after receiving all of the above content from NCMEC, Wichita Police Detective Neal was the first to search the private account folders in addition to the public tweets. The information

obtained from Detective Neal's warrantless search of the private account folders – private text message strings and video and image attachments between users – forms the basis of Counts 1 and 2.

Later, based on the information obtained from this warrantless search, Detective Neal requested and executed various state search warrants to electronic service providers. Counsel anticipates that the evidence obtained from the various state search warrants will be offered by the government to prove Counts 1, 2 and 3.

Mr. Sporn moves to suppress the content of the .zip Twitter account folders based on Detective Neal's unconstitutional warrantless search of those folders. He also moves to suppress all fruits of this unconstitutional search (which includes information obtained via subsequent search warrants predicated on that initial warrantless search).

### 3. Specific factual background related to the issues presented

### A. NCMEC performs limited review of CyberTips from Twitter.

The government began its investigation upon receiving, via NCMEC, three CyberTips from Twitter. Twitter is a social media service provider that allows its users to interact publicly and privately with other users. Twitter is best known for the "tweet" – a short public digital message, sometimes containing an attached image or video. Twitter is also a platform for users to create private networks. Users can exchange messages, including images and videos, via private "direct messages" (referred to as DMs) between other users or other groups of users. Functionally, tweets are similar to a web blog (or a public notice in a local

newspaper) and private direct messages are similar to an ongoing private text message conversation (or a private email string). Both the public and private messaging services are free basic user functions of Twitter.

The first and second tips, apparently duplicate, were received by NCMEC, from Twitter, on December 23 and 24, 2019. These tips referenced Twitter user mikeyfromtumbl1 and attached: (1) 5 tweets, including a text caption and an attached video or image; and (2) a .zip folder containing the entirety of the private content from the mikeyfromtumbl1 Twitter account. The third tip was received on April 28, 2020. The third tip referenced Twitter user survivinglife8 and attached: (1) 1 image posted by the account; and (2) a .zip folder containing the entirety of the private content from the survivinglife8 Twitter account.

After receiving the tips from Twitter, NCMEC searched the publicly tweeted images already viewed by Twitter from both accounts. According to NCMEC, Twitter had already viewed the 4 images and 1 video (comprising attachments to the 5 total tweets included in the first and second tip) from the mikeyfromtumbl1 account and 1 image from the survivinglife8 account (contained in the third tip). All the publicly tweeted images and video viewed by Twitter were catalogued by NCMEC in a report with a file name, MD5, and submittal ID. And, notably, each received an affirmative answer as to whether the "reporting ESP [i.e. Twitter] view[ed] the entire contents of the uploaded file" and "were entire contents of uploaded file publicly available?" For example, in the case of the video:

| Uploaded File Information | |
|---|---|
| Filename: | IJ0zdwgTLUXHDgNS.mp4 |
| MD5: | e9629ca57a1e26211cefb8356ceea94b |
| Submittal ID: | 78fac6410c76b7bc39f352f70afee87b |
| Did Reporting ESP view entire contents of uploaded file? | Yes |
| Did Reporting ESP view the EXIF of uploaded file? | (Information Not Provided by Company) |
| Were entire contents of uploaded file publicly available? | Yes |
| Original URL Where File was Located: | https://twitter.com/mikeyfromtumbl1/status/1208106707659964417 |

On the other hand, the .zip folders containing the private content associated with each of the mikeyfromtumbl1 and survivinglife8 accounts were reported differently. Like the images and video publicly tweeted, the .zip content folders received a file name and a pair of IDs. But, unlike those files, NCMEC did not report that the .zip content folders were viewed by Twitter or that the folders' contents were publicly available. For example:

| Uploaded File Information | |
|---|---|
| Filename: | mikeyfromtumbl1-1166023345470615552-2019-12-23-2274158.zip |
| MD5: | 731c046c2855a9aa41d318b58a9541d3 |
| Submittal ID: | 742fd17c6ae3466e7058a077ff0c9b31 |
| Did Reporting ESP view entire contents of uploaded file? | (Information Not Provided by Company) |
| Were entire contents of uploaded file publicly available? | (Information Not Provided by Company) |

And, unlike the 5 images and 1 video viewed by Twitter, the .zip folders contained private information, including private direct message correspondence between mikeyfromtumbl1 and survivinglife8 and other users. Some of these private messages had attachments as well. The .zip folder for the mikeyfromtumbl1 account contained recorded private correspondence between mikeyfromtumb1 and approximately 87 other Twitter users. The .zip folder for the survivinglife8 account contained private correspondence between mikeyfromtumb1 and approximately 120

other Twitter users. And each account folder contained the IP address used to connect to Twitter from particular devices over time. Moreover, each contained material that was, on its face, not child pornography, (e.g. .txt[1] files). And the account folders contained IP address information. The IP address information was associated with logins for both accounts, across a period spanning from August 26, 2019 to February 28, 2020 (roughly 6 months) that identified the specific location information of the users over time.

NCMEC handled the publicly tweeted images and video differently from the private .zip content folders. NCMEC searched only the publicly tweeted images and video but did *not* review the private .zip content folders for either account. In the case of mikeyfromtumbl1, the user reported in tips 1 and 2, NCMEC charted their work:

| Files Viewed by NCMEC | |
|---|---|
| Filename | MD5 |
| IJ0zdwgTLUXHDgNS.mp4 | e9629ca57a1e26211cefb8356ceea94b |
| EJUP0BUXkAAkJD2..jpg | 60fe71c3403af0bcbec38570dc66f90f |
| EMAFlpAWsAUgCi5.jpg | 312e5d0168967bcfaca9f41c500da1ae |
| EL_9NOxXYAABXnV.jpg | d1f13b3544621ab055eb9c914c1a366e |
| EJV3rBjWwAA42yK.jpg | c7e0cc05273852818fcdc4fa52a7c3fd |

**Files Not Viewed by NCMEC:**

NCMEC staff have not viewed the following uploaded files submitted with this report and have no information concerning the content of the uploaded files other than information voluntarily provided in the report by the reporting ESP.

| Files Not Viewed by NCMEC | |
|---|---|
| Filename | MD5 |
| mikeyfromtumbl1-1166023345470615552-2019-12-23-2274158.zip | 731c046c2855a9aa41d318b58a9541d3 |

---

[1] A .txt file extension is a simple file extension that contains only text. Therefore, it may never contain a "visual depiction." 18 USC § 2256(5).

**B. Wichita Police Detective Neal conducts a warrantless search of the private .zip folders.**

NCMEC forwarded the tips, the original attachments provided by Twitter, and their reports to the Wichita Police Department. Detective Neal was assigned to investigate each of the Twitter accounts.

Detective Neal began her investigation by reviewing the totality of the information forwarded to her from NCMEC. She reviewed not only the previously searched and publicly available images and video, but she also searched the private .zip folders associated with each account not previously reviewed. And during that search, she reviewed private correspondence, including the private direct messages and attachments, as well as "Tweet text"[2] also not reported to have been previously reviewed by Twitter or publicly available. Detective Neal described the scope of her review of the private .zip folders in a series of Sedgwick County search warrant application affidavits for Twitter, Google, Yahoo, AT&T, and Cox accounts. She described her extensive review of both private account folders in subsequent search warrant applications. As it related to mikeyfromtumbl1:

---

[2] As described by NCMEC:

> Tweet text:
> Text content of Tweets from the reported account are contained in the file named USERNAME-tweets.txt (attached to the report in the zip file). The file contains status IDs, the text content of the Tweet, and a timestamp in UTC.

> There was a zip file that was sent with these two cyber tips that was titled "mikeyfromtumbl1-1166023345470615552-2019-12-23-2274158.zip." This file contains the information related to this account, including the subscriber information, which is what was listed in the Cyber Tip, Account Images, Account Videos, DM-Media, and Tweets.
>
> In the Account Images folder, there are 405 images of young adult males and males whose ages are difficult to determine that are in various states of undress, nudity, and sexual acts. In the Accounts Video folder, there are 170 videos of young adult males and males whose ages are difficult to determine that are in various states of undress, nudity, and sexual acts. In the DM-Media folder, there are 170 images and videos. Some of them involve young adult males and males whose ages are difficult to determine that are in various states of undress, nudity, and sexual acts. There is an image titled "1196444677563654149-x3dxQ4Ym.jpg" and a video titled "1196445092975906821-I9AV_0GCBxlvty_7JCf73BvYjFWIpeuZMGfqU_sVQn0.mp4" that show the same boy, who appears to be under the age of sixteen, changing in a locker room and his penis is exposed.

And as it related to survivinglife8:

> Affiant reviewed the files that were sent by Twitter. The file titled "LZ--tZEM.jpg" is a picture of a male whose age is difficult to determine. The male appears to be in the bathroom and is not wearing a shirt. The other file that Twitter sent is titled "Survivinglife8-1212098776556437504-2020-04-28-100673.zip.zip". This file contains the information related to this account, including the subscriber information, which is what was listed in the Cyber Tip, Direct Messages, Direct Messages Media, and Tweet Media.
>
> In the Tweet Media file, there are 266 images of young adult males and males whose ages are difficult to determine that are in various states of undress, nudity, and sexual acts. In the Direct messages Media, there are 251 images of young adult males and males whose ages are difficult to determine that are in various states of undress, nudity, and sexual acts.
>
> Affiant went through the Direct Messages of the account of **1212098776556437504** and found a conversation between that account and the account of **1051199712760459264** that began on 1-21-2020.

Detective Neal goes on to provide a statement-by-statement breakdown of the private direct messages exchanged between two users – ending 7504 and 9264 – which she only uncovered during her search of the private survivinglife8 account folder not previously reviewed by Twitter.

### C. State search warrants.

The information obtained from Detective Neal's search, described above, was the basis for search warrant applications seeking information from Twitter, AT&T, Cox,

Yahoo, and Google. Based on the information, on May 21, 2020, a Sedgwick County District Court Judge issued the requested search warrants: [3]

- The search warrant for Twitter authorized a seizure of "any and all information pertaining to" the Twitter account ending 9264. This account did not belong to Mr. Sporn. Rather, the account was the recipient of a private direct message from surivivnglife8, an account belonging to Mr. Sporn. *See* Exhibit 1A-C.

- The search warrant for AT&T authorized a search of AT&T Inc. Global Legal Demand Center for subscriber and account information related to particular IP addresses holding them to be dealt with according to law. *See* Exhibit 2A-C.

- The search warrant for Cox authorized a search of Cox Communications for subscriber and account information related to particular IP addresses holding them to be dealt with according to law. *See* Exhibit 3A-C.

- The search warrant for Yahoo authorized a search of Oath Holdings, Inc., for subscriber and account information as well as "any and all records associated with devices accessing and/or linked to the Yahoo account jordanpattenon426@yahoo.com" holding them to be dealt with according to law. *See* Exhibit 4A-C.

---

[3] The search warrants are attached hereto as exhibits in the following manner: for each search warrant Exhibit #A is the search warrant, Exhibit #B is the affidavit purporting probable cause, and Exhibit #C is a demonstrative exhibit excising information obtained unconstitutionally as discussed below.

- The search warrant for Google authorized a search of an address in California for subscriber and account information as well as "any and all records associated with devices accessing and/or linked to the Google account jordanpattenon3150@google.com" holding them to be dealt with according to law. *See* Exhibit 5A-C.

Throughout June and July 2020, the various ESPs returned information sought by the search warrants.

### 4. Analysis

Wichita Police Detective Neal conducted an unconstitutional warrantless search of the private .zip folders provided by Twitter associated with the mikeyfromtumbl1 and survivinglife8 accounts. The direct fruits of that search must be suppressed. So too must the fruits of subsequent state search warrants issued in reliance on her unconstitutional warrantless search.

Independently, the search warrants issued by the Sedgwick County District Court did not authorize a search *of* the information they authorized a search *for*. On that ground, too, evidence derived from the Sedgwick County search warrants must be suppressed.

### A. Detective Neal conducted an unconstitutional warrantless search.

The Fourth Amendment protects against unreasonable searches of "persons, houses, papers, and effects." U.S. Const. amend. IV. The amendment's protection embodies "a particular concern for government trespass upon" these enumerated areas. *United States v. Jones*, 565 U.S. 400, 406 (2012). It was this protection –

against physical governmental trespass – that the Fourth Amendment primarily guarded against until the latter half of the 20th century. *Id.* at 405; *United States v. Thompson*, 866 F.3d 1149, 1154 (10th Cir. 2017). Under this Fourth Amendment trespass theory, where "the Government obtains information by physically intruding on a constitutionally protected area," a Fourth Amendment "search has undoubtedly occurred." *Jones*, 565 U.S. at 406 n.3.

The Supreme Court has since supplemented this property-based approach to the Fourth Amendment with a privacy-based approach. *Jones*, 565 U.S. at 405-406. Under this Fourth Amendment privacy theory, the Fourth Amendment also protects against governmental searches that "violate a person's 'reasonable expectation of privacy.'" *Id.* at 406, 409 (citing *Katz v. United States*, 389 U.S. 347, 351 (1967); *see also United States v. Ackerman*, 831 F.3d 1292, 1307 (10th Cir. 2016)). This privacy-based approach is two-fold: (1) the person must have a subjective expectation of privacy in the item searched; and (2) that subjective expectation of privacy must be objectively reasonable. *Smith v. Maryland*, 442 U.S. 735, 740 (1979); *see also Thompson*, 866 F.3d at 1154.

In order to challenge the warrantless search of the Twitter accounts, Mr. Sporn need only satisfy one of these two approaches. *Jones*, 565 U.S. at 406-407. Yet, as the following explains, Mr. Sporn can challenge the government's warrantless search of his private Twitter accounts under both the Fourth Amendment trespass theory and a Fourth Amendment privacy theory. Detective Neal conducted a search when she opened and examined Mr. Sporn's Twitter accounts. And Mr. Sporn had a

subjective and objectively reasonable expectation of privacy in the private
information in his Twitter accounts.

### i. Randy Sporn has standing to challenge the search of the account folders for the mikeyfromtumbl1 and survivinglife8 Twitter accounts under a Fourth Amendment trespass theory.

A Fourth Amendment search occurs when "the Government obtains information
by physically intruding on a constitutionally protected area." *Jones*, 565 U.S. 400,
406 n.3. Mr. Sporn's mikeyfromtumbl1 and survivinglife8 Twitter accounts included
private information within the .zip folders, like private direct messages with other
Twitter users (with attachments), IP address information, and facially non-
contraband material. "Warrantless opening and examination of (presumptively)
private correspondence that could have contained much besides potential
contraband…seems pretty clearly to qualify as exactly the type of trespass to
chattels that the framers sought to prevent when they adopted the Fourth
Amendment." *Ackerman*, 831 F.3d at 1307.

The Tenth Circuit's decision in *Ackerman* resolves any dispute about the
application of the Fourth Amendment to private electronic correspondence. Indeed,
"many courts have already applied the common law's ancient trespass to chattels
doctrine to electronic, not just written, communications." *Id.* at 1308 (citations
omitted); see also *United States v. Warshak*, 631 F.3d 266, 288 (6th Cir. 2010)
("Given the fundamental similarities between email and traditional forms of
communication, it would defy common sense to afford emails lesser Fourth
Amendment protection."); *United States v. Forrester*, 512 F.3d 500, 511 (9th Cir.

2007) ("E-mail, like physical mail, has . . . a package of content that the sender presumes will be read only by the intended recipient. The privacy interests in these two forms of communication are identical."). Like email, private direct messages on Twitter and other social media platforms are "fundamental[ly] similar[]" to "traditional forms of communication." *See Warshak*, 631 F.3d at 285. Social media "plays an indispensable part in the Information Age. Over the last decade, [social media] has become so pervasive that some persons may consider it to be an essential means or necessary instrument for self-expression, even self-identification." *Id.* (internal citations omitted). "As some forms of communication begin to diminish, the Fourth Amendment must recognize and protect nascent ones that arise." *Id.*

The mikeyfromtumbl1 and survivinglife8 Twitter accounts were registered and operated by Mr. Sporn. Detective Neal did just what the Tenth Circuit has instructed officers not to do with a private citizen's property: she conducted a warrantless search of private information, not previously searched by a third party,[4] contained within the .zip folders. *Ackerman*, 831 F.3d at 1307-08. This is exactly the type of trespass to chattels that the framers sought to prevent when they adopted the Fourth Amendment. *Id.* at 1307.

And they contained more than just contraband. The account folders included private conversation threads with some two hundred other users across both accounts. The folders contained logged IP address information that identified the

---

[4] Neither Twitter nor NCMEC reported viewing the content of the account folders before Detective Neal opened them.

user's internet connection to a particular location over time. And Det. Neal read

private text conversations which are inherently not visual depictions of child

pornography – they're text.

> "In *United States v. Place*, 462 U.S. 696 (1983) and *United States v. Jacobsen*, 466 U.S. 109 (1984), the government's conduct could have revealed nothing about noncontraband items, so no 'search' took place within the meaning of the Fourth Amendment. In *Walter v. United States*, 447 U.S. 649 (1980), by contrast, the government's conduct could have revealed something previously unknown about noncontraband items, so a constitutionally triggering 'search' did take place."

*Ackerman*, 831 F.3d at 1306. And by the same reasoning the same result should

follow here.

### ii. Randy Sporn has standing to challenge the search of the account folders for the mikeyfromtumbl1 and survivinglife8 Twitter accounts under a Fourth Amendment privacy theory.

The Fourth Amendment also protects against governmental searches that

"violate a person's 'reasonable expectation of privacy.'" *Jones* 565 U.S. at 406, 409

(citing *Katz v. United States*, 389 U.S. 347, 351 (1967)); *see also Ackerman*, 831 F.3d

1307. When an individual subjectively "seeks to preserve something as private," and

his expectation of privacy is objectively "one that society is prepared to recognize as

reasonable," "an official intrusion into that private sphere generally qualifies as a

search and requires a warrant supported by probable cause." *Carpenter v. United

States*, 138 S. Ct. 2206, 2213 (2018).

This doctrine expands the Fourth Amendment beyond the typical notion of

property. *Id.* And importantly so. Any other conclusion would leave citizens "at the

mercy of advancing technology." *Id.* at 2214. For example, in *Riley*, the Supreme

14

Court recognized "the 'immense storage capacity' of modern cell phones in holding that police officers must generally obtain a warrant before searching the contents of a phone." *Id.* (quoting *Riley v. California*, 573 U.S. 373, 375 (2014)). So too here. Mr. Sporn has a reasonable expectation of privacy in the private content of his Twitter accounts (i.e., the information provided by Twitter on the .zip folders).

Mr. Sporn believed that his Twitter accounts (and associated information) were private. That is, he believed as all users do: what isn't tweeted publicly stays private, e.g. that his direct private correspondence with other users, which Twitter calls DMs – direct messages, reached only the addressed user. He did not expect that others could view the accounts, or any of the information associated with the accounts, found on the .zip folders searched by Detective Neal. He held a subjective expectation of privacy in all of this information.

And, that expectation is objectively reasonable. A private Twitter account is a "virtual container, capable of storing all sorts of private and personal details, from correspondence to other private (and perfectly legal) images, video or audio files, and beyond…As far as anyone knew at the time, they could have revealed virtually any kind of noncontraband information to the prying eye." *Ackerman*, 831 F.3d at 1306.

For example, the private Direct Messages (DMs) found on the Twitter accounts (and any attachments to those messages), are no different than email – an electronic message delivered via an internet service provider to other specific users. "A subscriber enjoys a reasonable expectation of privacy in the contents of emails

that are stored with, or sent or received through, a commercial ISP." *Warshak*, 631 F.3d at 288. That's because digital content of private messages exchanged between users on Twitter is no different than the content of letters shared by the U.S. Postal Service. Like letters, "trusting a [private direct message] to an intermediary does not necessarily defeat a reasonable expectation that the [message] will remain private." *Id.* at 285. Thus, for emails and letters "the police may not intercept it and examine its contents unless they first obtain a warrant based on probable cause." *Id.* Allowing access to private electronic communications contravenes that reasonable expectation of privacy. *Carpenter*, 138 S. Ct. at 2217. And just like sending a letter via a postal carrier or an email via an ESP, the fact that private messages are exchanged via a third-party service, digital or not, does not destroy an objective expectation of privacy. *Carpenter*, 138 S. Ct. at 2217. Society has already accepted a reasonable expectation of privacy for information communicated privately via social media. The information in the .zip account folders for Mr. Sporn's mikeyfromtumb1 and surivinglife8 accounts is that sort of information.

### B. The fruits of Detective Neal's unconstitutional warrantless search must be suppressed.

#### i. Information obtained as an immediate result of Detective Neal's search must be suppressed.

Detective Neal conducted unconstitutional warrantless searches of the private contents of the mikeyfromtumbl1 and surivinglife8 Twitter accounts when she conducted warrantless searches of the .zip folders, which included Mr. Sporn's private Twitter accounts. "The use of evidence secured through an illegal search and

seizure" is barred. *Mapp v. Ohio*, 367 U.S. 643, 648 (1961). Therefore, the exclusionary rule requires the exclusion of all evidence found on the .zip folders by Detective Neal.

### ii. The derived fruits of Detective Neal's search must be suppressed.

The exclusionary rule goes further to bar derivative evidence by operation of the exclusionary rule which requires the suppression of all evidence derived from the unconstitutional search. *Wong Sun v. United States*, 371 U.S. 471 (1963). Here, law enforcement relied on Detective Neal's unconstitutional search to establish probable cause to support each search warrant she requested from the Sedgwick County District Court – Twitter, Yahoo, Cox, Google, AT&T. "While the fruit of the poisonous tree doctrine applies only when the defendant has standing regarding the Fourth Amendment violation which constitutes the poisonous tree, the law imposes no separate standing requirement regarding the evidence which constitutes the fruit of that poisonous tree." *United States v. Olivares-Rangel*, 458 F.3d 1104, 1117 (10th Cir. 2006). Because law enforcement relied on the fruits of Detective Neal's unconstitutional search when obtaining each search warrant, the results of those warrants are derivative and must be suppressed.

Here, without the information obtained by Detective Neal's unconstitutional search of the account folders, the affidavits in support of the warrants for Twitter, AT&T, Cox, Yahoo, and Google lacked probable cause. *See United States v. Loera*, 923 F.3d 907, 924 (10th Cir. 2019). "An affidavit containing erroneous or unconstitutionally obtained information invalidates a warrant if that information

was critical to establishing probable cause. If, however, the affidavit contained sufficient accurate or untainted evidence, the warrant is nevertheless valid." *United States v. Snow*, 919 F.2d 1458, 1460 (10th Cir. 1990) (citing *United States v. Karo*, 468 U.S. 705, 719 (1984)). Here, the warrantlessly obtained fruits from the search of the private account folders pervaded each search warrant obtained by the government.

Accompanying this motion are a series of exhibits. Part A of each Exhibit is a search warrant issued by Sedgwick County District Court in reliance on Detective Neal's warrantless search. Part B of each Exhibit is a copy of the affidavit purporting to establish probable. Part C is a demonstrative copy of each affidavit excising the information unconstitutionally obtained by Detective Neal's search. In relevant part, the affidavits in support of probable cause for the search warrants, Parts B and C, are identical in each exhibit.

As demonstrated by Exhibits 1C – Twitter (demonstrably excised), 2C – AT&T (demonstrably excised), 3C – Cox (demonstrably excised), 4C – Yahoo (demonstrably excised), and 5C – Google (demonstrably excised) the remaining unexcised information is insufficient to establish probable cause. The unexcised information related to the mikeyfromtumbl1 Twitter account includes only that nude videos/images of males whose "ages are difficult to determine" were publicly tweeted. The affidavit fails to offer any facts supporting the conclusion about the apparent age of the males – summarily labeled "boys," e.g., lack of body hair, undeveloped body shape, or genital growth, and admittedly concedes that any

18

conclusion about age is uncertain, i.e., that it is "difficult to determine." And the remaining unexcised information related to the survivinglife8 account merely describes a shirtless male, nothing about child pornography. The affiant also sets forth that Mr. Sporn was a previously convicted sex offender and that his phone number was used to create the survivinglife8 account (which did not, according to the excised affidavit, contain any child pornography). Even taken as a whole, the affidavit failed to set forth probable cause absent the unconstitutionally obtained information. *Leora*, 923 F.3d at 924.

In *Leora,* the Tenth Circuit excised unconstitutionally obtained information from an affidavit and evaluated whether "there was probable cause absent that information." *Id.* at 924. The Court explained that "sufficient information must be presented to the magistrate to allow <u>that official</u> to <u>determine probable cause</u>; his action cannot be a mere ratification of the bare conclusions of others." *Id.* at 924 (emphasis in original). As explained above, the affiant offered no facts to support that the "boys" were minors and failed to justify that conclusion in light of her admissions their ages were "difficult to determine." Given the lack supporting facts, having excised the unconstitutionally obtained information, an official could do no more than ratify the affiants admittedly uncertain conclusion. Thus, probable cause is not set forth absent the unconstitutionally obtained information.

Therefore, the fruits of the Sedgwick County search warrants (Exhibits 1A, 2A, 3A, 4A, and 5A) must be suppressed because the affidavits fail to establish probable cause without the excised information, *Leora*, 923 F.3d at 924, and are therefore

fruits of the warrantless search which must be excluded, *Wong Sun v. United States*, 371 U.S. 471 (1963).

> **C. The search of the information authorized to be seized by the Sedgwick County search warrants was warrantless and unreasonable.**

The search warrants issued by the Sedgwick County district court for AT&T, Cox, Yahoo, and Google authorized a search of a premises *for* particular information. No Sedgwick County search warrant authorized the search *of* the particular information obtained. Yet, upon receipt of the evidence Detective Neal was only authorized to search *for*, Detective Neal engaged in a search *of* the information she obtained. The fruits of that warrantless search must be suppressed.

All four search warrants (AT&T, Exhibit 2; Cox, Exhibit 3; Yahoo, Exhibit 4; and Google, Exhibit 5) followed an identical format. First, the warrant set forth information to be seized from a certain place. For example, Exhibit 4A regarding Yahoo:



THE 18TH JUDICIAL DISTRICT OF SEDGWICK COUNTY, KANSAS
*IN RE: SEARCH WARRANT FOR:* a Yahoo account titled jordanpatterson426@yahoo.com; located at Oath Holdings, Inc., 701 1st Avenue, Sunnyvale, CA 94089, with preferred service to the Law Enforcement Submissions system at https://lawenforcementrequests.oath.com.

There, the warrant authorizes a search "for" certain records "located at" Oath Holdings. Next, the search warrant sets out the "account" to be searched for in additional detail. For example, Exhibit 4A regarding Yahoo:

> Having evidence under oath before me from which I find there is probable cause to believe that an offense against the laws of the State of Kansas has been committed and that certain contraband, fruits, instrumentalities and evidence of such offense, to-wit:
>
> (1) Subscriber and account information including name, address, and phone number for Yahoo account jordanpatterson426@yahoo.com;
> (2) Date that account was created for Yahoo account jordanpatterson426@yahoo.com;
> (3) Current account status for Yahoo account jordanpatterson426@yahoo.com;
> (4) Alternate contact information including phone numbers, email addresses, or usernames for Yahoo account jordanpatterson426@yahoo.com;
> (5) Types of services utilized by Yahoo account jordanpatterson426@yahoo.com;
> (6) User connection, upload and download logs, including method of connection to system (e.g. HTTP, POP, IMAP, Telnet, SSH); data transfer volume; IP addresses associated with such activity for Yahoo account jordanpatterson426@yahoo.com;
> (7) Any and all records associated with devices accessing and/or linked to the Yahoo account jordanpatterson426@yahoo.com.

There, particular information to be searched for is specifically set out. Next, the Court commands law enforcement what they are authorized to search "for." For example, Exhibit 4A regarding Yahoo:

> **YOU ARE THEREFORE COMMANDED** forthwith to search the persons, place, thing, or means of conveyance herein before specified for such items holding them to be dealt with according to law and make due return of this warrant within (10) days of the date hereof.

The search warrants authorized law enforcement to search the place, e.g. Yahoo, *for* the specified account, e.g. records listed at (1)-(7) above. The warrant then commands law enforcement to hold them "to be dealt with according to law."

The search warrants for AT&T - Exhibit 2A, Cox - Exhibit 3A, Yahoo - Exhibit 4A, and Google - Exhibit 5A, never authorized a search *of* the items they were commanded to search *for*. Rather, the Court's directive that they be handled "according to law" plainly instructed law enforcement to seek further legal authorization to search the records they obtained if they existed. Nevertheless,

Detective Neal conducted a warrantless search of the records without first obtaining a warrant.

These searches exceeded the scope of the warrants. The warrants authorized officers to obtain the records for Mr. Sporn's various accounts, containing private information. *See supra 4Ai, ii.* Because the information obtained by Detective Neal exceeded the scope of the warrant, that information must be suppressed because it is an unconstitutional fruit of the search. *Mapp v. Ohio*, 367 U.S. 643, 648 (1961); *Wong Sun v. United States*, 371 U.S. 471 (1963).

## 5. Conclusion

For the foregoing reasons the Court should grant the motion and suppress and exclude all evidence obtained and derived from Detective Neal's warrantless search and from search warrants that failed to authorize the search that resulted.

Respectfully submitted,

s/Mitch E. Biebighauser
MITCH E. BIEBIGHAUSER
Sup. Ct. No. 26515
Assistant Federal Public Defender
Federal Public Defender Office
301 N. Main, Suite 850
Wichita, KS 67202
Telephone: (316) 269-6170
Fax: (316) 269-6175
E-mail: mitch_biebighauser@fd.org

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I electronically filed the foregoing with the Clerk of the Court on October 27, 2021, by using the CM/ECF system, which will send a notice of electronic filing to the following:

Jason Hart
Assistant United States Attorney
Jason.Hart2@usdoj.gov

<u>s/Mitch E. Biebighauser</u>
MITCH E. BIEBIGHAUSER, #26515